# APPENDIX 1

## AGREEMENT TO SETTLE CLAIMS

*J.R., by and through his parents, Ju.R. and Ja.R., on his own behalf and on behalf of similarly situated individuals v. Blue Cross and Blue Shield of Illinois; Catholic Health Initiatives Medical Plan and Catholic Health Initiatives, No. 2:18-cv-01191-JLR*
*United States District Court, Western District of Washington at Seattle*

This Agreement to Settle Claims ("Agreement") is between plaintiff J.R., by and through his parents Ju.R. and Ja.R. ("Named Plaintiffs"), the "Settlement Class" (as defined in Section 1.21), and defendants Catholic Health Initiatives Medical Plan, as it currently is named and may be renamed in the future (the "Plan") and CommonSpirit Health (formerly known as Catholic Health Initiatives) (referred to herein as "Catholic Health Iniatives" or "CHI") (collectively referred to herein as the "CHI Defendants") and Blue Cross Blue Shield of Illinois, a division of Health Care Service Corporation (collectively, "Defendants"). Named Plaintiffs and Defendants are referred to collectively as the "Parties." This Agreement is a full expression of the agreements between the Parties.

## RECITALS

This Agreement is made with reference to the following facts:

1.      Named Plaintiffs allege that Defendants violated the Plan and breached their fiduciary duties by excluding all coverage of Applied Behavioral Analysis therapy ("ABA" or "ABA therapy") for the treatment of autism spectrum disorder. Defendants deny these allegations. The action, brought in the United States District Court for the Western District of Washington, seeks relief on behalf of a class of similarly situated participants and beneficiaries in the Plan.

2.      The Parties wish to resolve all claims with respect to coverage of ABA for Named Plaintiffs and the Class Members.

## AGREEMENT

*1.      Definitions.*

1.1     "*ABA," "ABA therapy," or "Applied Behavioral Analysis services*" shall mean: the design, implementation and evaluation of environmental modifications, using behavioral interventions for the treatment of Autism. The goal of the therapy is to produce clinically significant improvements in core deficits associated with Autism (*i.e.*, significant issues with communication, social interaction or injurious behaviors). It includes the use of direct observation, measurement and functional analysis of the relationship between the environment and behavior and uses behavioral stimuli and consequences.

1.2     "*Action*" shall mean *J.R. et al. v. Blue Cross and Blue Shield of Illinois, et al.*, Case No. 2:81-cv-01191-JLR, a putative class action pending in the United States District Court for the Western District of Washington.

1

1.3     "*Agreement Execution Date*" shall mean: the date on which this Agreement is fully executed.

1.4     "*Autism*" shall mean:  a diagnosis of an Autism Spectrum Disorder under DSM-IV-TR 299.0, 299.10 or 299.80 and/or  DSM-V 299.0 or any subsequent revisions thereto.

1.5     "*Claims Processor*" shall mean:  Epiq Class Action and Claims Solutions, which shall establish a trust that shall be treated at all times as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, *et seq.* (the "Qualified Settlement Fund" as defined below).  References herein to actions and responsibilities of the Claims Processor shall be to those actions and responsibilities it shall take in its position as administrator of the Qualified Settlement Fund.

1.6     "*Case Contribution Award"* shall mean:  any monetary amount awarded by the Court in recognition of the Named Plaintiffs' assistance in the prosecution of this Action and payable pursuant to Section 12.3.

1.7     "*Class Released Claims*" shall mean:  any and all claims of any nature whatsoever that were brought, or that could have been brought against the Releasees, by the Named Plaintiffs on behalf of the Class Members, relating to the coverage of or benefits for ABA therapy by members of the Settlement Class, including but not limited to claims for any and all benefits, losses, opportunity losses, damages, attorneys' fees, costs, expenses, contribution, indemnification or any other type of legal or equitable relief. By way of example, and without in any way limiting the foregoing, Class Released Claims include, but are not limited to, claims seeking coverage of or benefits for ABA therapy for Autism under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), claims for breach of fiduciary duty related to the denial of coverage for ABA therapy to treat Autism, and claims for violations of the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Mental Health Parity Act") relating to the denial of coverage for ABA therapy for Autism.

1.8     "*Class Counsel*" shall mean: Sɪʀɪᴀɴɴɪ Yᴏᴜᴛᴢ Sᴘᴏᴏɴᴇᴍᴏʀᴇ Hᴀᴍʙᴜʀɢᴇʀ.

1.9     "*Class Members*" shall mean:   those individuals who comprise the Settlement Class.

1.10    "*Class Period*" shall mean August 14, 2012-December 31, 2018, inclusive.

1.11    "*Court*" shall mean the United States District Court for the Western District of Washington.

1.12     "*Defendants*" shall mean: Catholic Health Initiatives, Catholic Health Initiatives Medical Plan and Blue Cross Blue Shield of Illinois, a division of Health Care Service Corporation.

1.13    "*Effective Date*" shall mean:  the date on which all of the conditions to settlement set forth in Section 2 have been fully satisfied or waived.

1.14  "*Final*" shall mean:  The Settlement contemplated under this Agreement shall become "Final" thirty (30) days after any and all appeals periods applicable to the Action have expired and no other proceeding for review of the Action has been initiated.

1.15  "*Named Plaintiffs*" shall mean:  J R ("J.R.") and his parents Ju R ("Ju.R.") and Ja R ("Ja.R.").

1.16  "*Parties*" shall mean: Named Plaintiffs and Defendants.

1.17  "*Qualified Settlement Fund*" means the trust into which the Settlement Amount shall be deposited and which shall be administered in accordance with Section 8 of this Agreement.

1.18  "*Releasees*" shall mean: Defendants and each of their affiliates, subsidiaries, parents, fiduciaries, trustees, recordkeepers, partners, attorneys, administrators, representatives, agents, directors, officers, employees, insurers, reinsurers, predecessors, and their Successors-in-Interest.

1.19  "*Settlement*" shall mean: the settlement to be consummated under this Agreement.

1.20  "*Settlement Amount*" shall mean: the sum of $800,000.00.

1.21  "*Settlement Class*" shall mean:  a class to be certified for settlement purposes under Federal Rule of Civil Procedure 23(b)(1) consisting of all individuals who:

   (1)  have been participants or beneficiaries in the Plan as administered by any of the CHI Plan's third-party administrators, with the exception of any participants or beneficiaries in the Plan as administered by Zenith American Solutions, at any time between August 14, 2012 to December 31, 2018

   (2)  who had an Autism diagnosis and received ABA therapy to treat Autism during the Class Period; or

   (3)  the parents and guardians of the individuals described in Section 1.21(1) and (2); or

   (4)  the Successors-in-Interest of the individuals described in Section 1.21(1)-(3).

1.22  "*Successor-in-Interest*" shall mean: an entity's or person's estate, legal representatives, heirs, successors or assigns, and any other entity or  person who can make a legal claim by or through such an entity or person.

1.23  "*Taxes*" shall mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties,

additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

**2.      Conditions to Effectiveness of the Settlement.**

2.1      *General*.  The Settlement provided for in this Agreement shall become Effective when each and every one of the following conditions in Sections 2.2 through 2.4 have been satisfied or waived.

2.2      *Court Approval*.  The Settlement contemplated under this Agreement shall be  approved by the Court as provided herein.  The Parties agree jointly to recommend to the Court that it approve the terms of the Agreement and the Settlement contemplated hereunder.  The Parties agree to promptly take all steps and efforts contemplated by the Agreement, including the following:

2.2.1      *Certification of Settlement Class*.  The Court shall have certified the Settlement Class for settlement purposes only.  Class Counsel shall make a motion for certification of the Settlement Class under Federal Rule of Civil Procedure 23(b)(1) as part of the motions to approve this Agreement.  In agreeing to the certification of a class for settlement purposes, Defendants do not admit that Named Plaintiffs could have met the requirements for class certification under Rule 23 in the normal course of the litigation.

2.2.2      *Motion for Preliminary Approval and Notices*.  The Court shall have preliminarily approved the Agreement ("Preliminary Approval Order"), authorized the issuance of notice ("Class Notice").   The Class Notice will be sent to any participants or beneficiaries enrolled in the Plan at any time from August 14, 2012 and December 31, 2018 who have submitted claims to the Plan with an Autism diagnosis, if they were or are enrolled in a schedule of benefits that is administered by a third party administrator ("TPA") with which the Plan has a contractual relationship as of October 15, 2019.  The Class Notice will be sent to all former participants or beneficiaries who were enrolled in the Plan at any time from August 14, 2012 and December 31, 2018, if they were enrolled in a schedule of benefits administered by a former third-party administrator with which the Plan does not have a contractual relationship as of October 15, 2019 (the "Former TPAs") (collectively referred to as the "Class Notice Recipients").   The Class Notice shall be in a form approved by Named Plaintiffs and Defendants and substantially similar to Appendix A attached. Class Counsel shall make a motion for preliminary approval, authorization to send the Class Notice, and for approval of the establishment of, and the continuing jurisdiction over, the Qualified Settlement Fund ("Preliminary Motion").   The Court must approve the form of the Class Notice and conclude that

the notice to be sent fairly and adequately describes the terms of the Agreement, including the attorneys' fees sought by Class Counsel, gives notice of the time and place of the hearing for final approval of the Settlement, describes how a Class Member may comment on, object to, or support the Settlement.

2.2.3   *Issuance of Class Notice*.  By the date and in the manner set by the Court in its Preliminary Approval Order, the Claims Processor shall have caused the Court-approved Class Notice to be delivered to the Class Notice Recipients in the form and manner approved by the Court.  Defendants shall transmit a list of the names and addresses of Class Notice Recipients located after a reasonable search for such information, to the extent it is within Defendants' possession, custody or control, directly to the Claims Processor no later than 60 days after the entry of the Preliminary Approval Order.

2.2.4   *Fairness Hearing*.  On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing ("Fairness Hearing") during or after which the Court will determine by order (the "Final Order") whether: (i) the proposed Settlement between the Parties is fair, reasonable and adequate and should be approved by the Court; (ii) final judgment should be entered ("Judgment"); (iii) the requirements of Rule 23 and due process have been satisfied in connection with the distribution of the Class Notice; (iv) to approve the payment of attorney fees and costs to Class Counsel as set forth herein, pursuant to Sections 12.1 and 12.2; and (v) that notice to the appropriate state and federal officials has been provided as required by CAFA through the mailing of the CAFA Notice and that Defendants have satisfied their obligations pursuant to 28 U.S.C. § 1715.  The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Order.  Defendants shall take no position with respect to Class Counsel's request for attorneys' fees, costs and case contribution awards.

2.2.5   *Motions for Final Approval*.  On the date set by the Court in its Preliminary Approval Order, Named Plaintiffs shall have filed a motion ("Final Approval Motion") for a Final Order.  The Parties shall confer on the terms of the Final Order that Named Plaintiffs will propose to the Court.

2.3   *Payment Made*.  The CHI Defendants shall have caused payment, pursuant to Section 8, to have been made.

2.4   *No Termination*.  The Settlement shall not have terminated pursuant to Section 10.

**3.**      *Releases.*

3.1     *Releases of the Releasees.* Upon the Effective Date of Settlement, Named Plaintiffs, on their own behalf and, to the full extent permitted by law, on behalf of the Class Members, absolutely and unconditionally release and forever discharge Releasees from any and all Class Released Claims that Named Plaintiffs or the Settlement Class have directly, indirectly, derivatively, or in any other capacity ever had or now have whether known or unknown, supported or unsupported.

3.2     Class Members shall be conclusively deemed to have covenanted not to sue Releasees for any and all Class Released Claims and shall forever be enjoined and barred from asserting any Class Released Claims, except as specifically provided in Section 6.7. This in no way applies to any action taken by the Named Plaintiffs or Class Members to enforce the terms of the Agreement. This in no way applies to any action taken by Named Plaintiffs or Class Members to enforce the terms of the Agreement.

3.3     *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.* Upon the Effective Date of Settlement, Defendants, to the full extent permitted by law, absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Class Counsel from any and all claims based on the institution or prosecution of the Action.

3.4     Defendants shall be conclusively deemed to have covenanted not to sue Named Plaintiffs, the Settlement Class and Class Counsel for any and all such released claims relating to institution or prosecution of the Action. This in no way applies to any action taken by Defendants to enforce the terms of the Agreement.

**4.**      *Representations and Warranties.*

4.1     *The Named Plaintiffs.* Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Class Released Claims against any Releasees, and further covenant that they will not assign or otherwise transfer any interest in such claims.

4.2     *The Parties.* The Parties, and each of them, represent and warrant that they are voluntarily entering into this Agreement as a result of arm's-length negotiations; in executing this Agreement they are relying upon their own judgment, belief and knowledge, and the advice and recommendations of their own counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof. The Parties, and each of them, represent and warrant that they have carefully read the contents of this Agreement; they have made such investigation of the facts pertaining to the Settlement, this Agreement, and all of the matters pertaining thereto as they deem necessary

or appropriate; and this Agreement is signed freely by each person executing this Agreement on behalf of each party. Each individual executing this Agreement on behalf of any other person does hereby represent and warrant to the other parties that he or she has the authority to do so.

4.3    *Settlement Class Members*.   As a condition of receiving any monetary payment pursuant to this Agreement, a Class Member must represent and warrant, as part of the claims process, that he or she (1) has not assigned or otherwise transferred any interest in any Class Released Claims against any Releasees, and (2) will not do so until they have received payment pursuant to this Agreement and the claims against the Releasees have been released.

**5.    *No Admission of Liability.***  The Parties understand and agree that this Agreement embodies a compromise and settlement of disputed claims, and that nothing herein shall be deemed to constitute an admission of any liability or wrongdoing by any of the Releasees.  Neither the fact nor the terms of this Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Agreement or arising out of or relating to the Final Order and motions for preliminary and final approval.

**6.    *Coverage Agreements.***

6.1    *Coverage of ABA Therapy*.  The CHI Defendants agree to continue to cover ABA therapy for Autism in the Plan at least through December 31, 2021.

6.2    *Limitations on  Certain Conditions and Exclusions*.  So long as the CHI Plan is covering services to treat Autism for the time period set forth in Section 6.1, the CHI Defendants agree not to use the following as exclusions and/or limitations for ABA therapy to treat Autism:

6.2.1   *Age Exclusion.*  The CHI Defendants agree that they will not deny ABA by asserting that an individual's age categorically disqualifies him or her from coverage.  This subsection does not prohibit the CHI Defendants from considering age as one factor in a recognized, clinically appropriate standard of care.

6.2.2   *Treatment Limitations.* The CHI Defendants agree that they will not impose treatment limitations on ABA except to the extent permitted by the Federal Mental Health Parity Act, including its related regulations.

6.2.3   *Habilitative Exclusion*.   The CHI Defendants shall not categorically deny or limit ABA coverage based upon a habilitative exclusion.  This section does not prohibit the CHI Defendants' ability to limit treatment due to a medical necessity determination.

6.2.4   *Clinic-based Exclusion.*  The CHI Defendants agree that they will not deny ABA solely on the basis that the therapy is provided in the Class Member's home or community-based setting, rather than in a professional office or clinic.

6.2.5   *Academic or Educational Exclusion.*  The CHI Defendants shall not categorically deny or limit ABA coverage based upon an "academic" or "educational" exclusion.

6.2.6   *Experimental/Investigational Exclusion.*  The CHI Defendants shall not categorically deny or exclude ABA coverage based upon an "experimental" or "investigational" exclusion.

6.2.7   *Specific Exclusions.*  The CHI Defendants agree that they will not create any exclusions categorically denying ABA to Class Members,  except to the extent permitted by the Federal Mental Health Parity Act, including its related regulations.

6.3   *Evaluation of Medical Necessity and ABA Authorization Criteria.*

6.3.1   *Medical Necessity.*  Nothing herein shall be construed to require coverage for ABA that is not medically necessary for the treatment of Autism for a particular individual.

6.3.2   *Independent Review Organization ("IRO") Rights Preserved.*  Nothing herein, or in any clinical review criteria, shall be construed to limit a Class Member's right to seek an independent review of any denial of ABA to the extent that the Class Member has that right under the Plan.  The CHI Defendants agree to comply with existing law regarding notification of Class Members, in any denial of coverage for ABA, of their appeal rights, including the right to seek an IRO to the extent that right exists under the Plan.

6.4   *Management of Care Permitted.*  Nothing herein shall be construed to modify, waive, limit, or expand the CHI Defendants' obligations and/or ability to manage care or utilization, or to employ care management techniques for mental health services, including but not limited to authorized treatment plans; preauthorization requirements based on the type of service; concurrent and retrospective utilization review; utilization management practices, discharge coordination, and planning; and contracting with and using a network of participating providers.

6.5     *Permissible Changes in Coverage.* During the time period set forth in Section 6.1, the CHI Defendants may alter coverage of ABA under this Agreement if any of the conditions listed below occur.  Such alteration of coverage shall not be an event of termination or a violation of this Agreement and is subject to this Agreement.  If such alteration occurs within one year after the Effective Date of this Settlement Agreement, the CHI Defendants shall provide notice of any such change to Class Counsel at least 30 days prior to implementation or within a reasonable time given the circumstances.

6.5.1   To comply with applicable federal or state law or regulation regarding coverage of ABA in any manner that differs from the terms of this Agreement, the CHI Defendants may alter coverage of ABA to conform to such mandate(s).

6.5.2   If the Federal Mental Health Parity Act is repealed or modified in any manner that creates legal or coverage obligations that differ from the terms of this Agreement, the CHI Defendants may alter coverage of ABA as long as changes comply with the Federal Mental Health Parity Act after its modification or other existing federal law in place after any repeal of the Federal Mental Health Parity Act.  In the event of the repeal or modification of the Federal Mental Health Parity Act, such alterations could include the elimination of the coverage for ABA by the CHI Defendants, or the expansion of coverage.

6.5.3   If new evidence-based, clinical best practices result in treatments at least as effective as ABA in treating Autism, the CHI Defendants may choose to cover such treatments instead of ABA.

6.5.4   If new peer-reviewed, scientific literature demonstrates that any expected harmful effects outweigh expected beneficial effects for ABA.

6.5.5   If the Plan is changed to no longer provide mental health benefits, whether through modification or termination of the Plan.

6.6     *Modification of Releases if the CHI Defendants Alter Coverage.*  In the event that the CHI Defendants change or alter their coverage of ABA during the time period set forth in Section 6.1, then Named Plaintiffs and all Class Members at the time of the change or alteration shall, notwithstanding any releases provided in this Agreement, be permitted to seek any relief, including legal or equitable relief, regarding conduct on or after the date of such change or alteration.

6.8    *Coverage of ABA on or after January 1, 2022.*  This Agreement will not govern or impact the CHI Defendants' obligation to provide coverage for ABA on or after January 1, 2022.

**7.    *Coverage Modification Based on Subsequent Judicial Decisions and Statutory/Regulatory Changes.***

7.1    *Reduction or Elimination of Coverage Obligations.*  In the event an applicable statute, regulation, or Final Decision from the Ninth Circuit Court of Appeals or the Supreme Court of the United States reduces or eliminates some or all of the obligations to cover ABA to treat Autism, Defendants may reduce or eliminate the coverage as stated herein to that required by the Federal Mental Health Parity Act, including its related regulations or Final Decision.  A Final Decision is a decision of the Supreme Court of the United States or a decision by the  Ninth Circuit Court of Appeals that is not appealed within the time permitted for such appeals or that, if appealed, is not accepted for review.

7.2    *Increase in or New Coverage Obligations.*  In the event an applicable statute, regulation, or Final Decision from the Ninth Circuit Court of Appeals or the Supreme Court of the United States increases or imposes new obligations to cover ABA to treat Autism beyond those required herein Defendants must provide the coverage required by the statute, regulation, or Final Decision to the extent required by the Federal Mental Health Parity Act, including its related regulations.

7.3    *Amicus Permitted.*  This Agreement does not restrict the right of the Parties to seek amicus status in any case for any issue.  The Parties also reserve all rights to assert any arguments in any amicus briefs they do file.

**8.    *Qualified Settlement Fund.***

8.1    *Settlement Amount.*  The Claims Processor shall establish a trust into which the CHI Defendants shall cause the Settlement Amount to be paid within 30 days after this Agreement is Final, as that term is defined in Section 1.14. Named Plaintiffs and the CHI Defendants agree that the amounts held in the trust will at all times be treated as a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, *et seq*.  Named Plaintiffs and the CHI Defendants further agree that for purposes of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and the Treasury Regulations promulgated thereunder, Catholic Health Initiatives shall be treated as the "transferor" within the meaning of Treasury Regulation §1.468B-1(d)(1), and that the Claims Processor shall be the "administrator" of the trust fund within the meaning of Treas. Reg. §1.468B-2(k)(3). Named Plaintiffs and the CHI Defendants agree the Claims Processor shall, in establishing the account, make any such elections as necessary or advisable to carry out the "relation back election" (as defined in Treas. Reg. §1.468B-

1(j)(2)(i)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Claims Processor to timely and properly prepare and deliver the necessary documentation for signature by all necessary Parties, and to cause the appropriate filing to occur. Named Plaintiffs and the CHI Defendants intend that the transfers to the trust described in this paragraph will satisfy the "all events test" and the "economic performance" requirement of Code §461(h)(1) and Treas. Reg. §1.461-1(a)(2).  The Claims Processor shall be responsible for filing tax returns for the trust, if appropriate, including application for employer identification numbers in accordance with Treas. Reg. §1.468B-2(k)(4). All tax expenses shall be paid out of the trust; in all events the Releasees shall not have any liability or responsibility for any tax expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.  Tax expenses shall be paid out of the trust fund in a timely manner without prior order from the Court, and the Claims Processor shall be obligated to withhold from distribution any funds necessary to pay such amounts.

8.2    *Settlement Amount Is Payment for Claims, Attorneys' Fees and Costs, Case Contribution Award, and the Cost of Claims Administration/Notice.*  The cost of the Court-approved Class Notice (including any costs incurred by the CHI Defendants in connection with the identification of the Class Notice Recipients and/or the Settlement Class as set forth in Section 8.2.1 below) claims administration costs (including any costs incurred by the CHI Defendants related to claims administration as set forth in Section 8.2.1 below), attorneys' fees as set forth in Section 12.1, litigation costs as set forth in Section 12.2, the case contribution award as set forth in Section 12.3, arbitration costs as set forth in Section 8.4.5, and payments of approved claims to Class Members shall come exclusively from the Qualified Settlement Fund.  Defendants shall not be liable for any taxes that any person may owe due to the receipt of any portion of the Qualified Settlement Fund.

8.2.1   *Payment of CHI's Expenses.*  The Parties understand that the Former TPAs may charge CHI to obtain information necessary for identification of the Class Notice Recipients and/or the Settlement Class and claims administration.  CHI may seek reimbursement in an amount of no more than $5,000 from the Settlement Fund for such charges.  CHI will submit any such charges to the Claims Administrator for reimbursement.

8.3    *Distribution of Qualified Settlement Fund.* The Qualified Settlement Fund will be used to pay (1) attorney's fees as set forth in Section 12.1; (2) litigation costs as set forth in Section 12.2; (3) costs of issuance of the Class Notice and claims administration, including the costs set forth in Section 8.2.1; (4) arbitration costs described in Section 8.4.5; (5) Case Contribution Award as set forth in Section 12.3; (6) Payment for unreimbursed ABA-

related expenses to J.R. at set forth in Section 8.4; (7) payments to Class Members who either (a) received medically-necessary ABA therapy between August 14, 2012 and December 31, 2018, inclusive, and who paid out-of-pocket and were not reimbursed for this therapy or (b) have a debt for medically-necessary ABA therapy received between August 14, 2012 and December 31, 2018, inclusive, which is not yet paid; and (8) any taxes due on the Qualified Settlement Fund.

8.4  *Claims Processing*.  ABA costs incurred by a Class Member shall be eligible for reimbursement as follows:

8.4.1  *Payment to Class Members or Designee*.  Payment shall be made to the Class Member or his or her designee if the Class Member notifies the Claims Processor in writing to make such a payment to his or her designee.

8.4.2  *Submission of Claims*. Class Members will be provided with a Claim Form in connection with the Class Notice described in Sections 2.2.2 and 2.2.3.

8.4.2.1  *Elements of Claim.*  The Claim Form shall require the Class Member (or his or her designee) to indicate and verify (1) the Autism diagnosis of the Class Member; (2) the date(s) of ABA treatment (month/year) and the name(s) and contact information (to the extent that contact information is available) of the provider(s) who administered the ABA treatment; (3) the unreimbursed charges or debt incurred associated with that ABA treatment, including any insurance; and (4) that the ABA treatment was medically necessary to treat the Class Member's Autism.

8.4.2.2  *Documentation Required.*  The following documentation will be required:

8.4.2.2.1 The approximate date(s) of ABA treatment (at least month and year), which can be evidenced by clinical notes, an appointment schedule/log/calendar created at the time of treatment, invoices seeking payment that include dates of service, paid checks with notations regarding dates of treatment, a signed letter from the provider or other evidence of similar reliability; and

8.4.2.2.2 The unreimbursed charges or debt incurred associated with ABA treatment, which can be evidenced by cancelled checks, credit card account statements, provider ledgers, invoices stamped "paid" or showing amounts due, checking account statements, signed letters from the provider or the provider's employer

documenting the amount paid or debt incurred (so long as the letter connects payments/debt with ABA Services dates by at least month and year), or other evidence of similar reliability.

8.4.3    The Claims Processor shall review the claim forms to confirm that the items indicated in Sections 8.4.2.1, 8.4.2.2.1 and 8.4.2.2.2, *above*, are present in the claim form and that the submitted documentation supports the claimed amount.  The Claims Processor shall also confirm with Defendants that the Class Member was enrolled under the Plan during the Class Period and covered by this Agreement.   The Claims Processor shall further confirm with Defendants that the claimed sums are not duplicative of claims previously paid by Defendants, to the extent such information is within Defendants' possession, custody or control.  Defendants may waive confirmation that the claimed sums are not duplicative of claims previously paid by Defendants, should it not be cost-effective to obtain confirmation.

    8.4.3.1 *Opportunity to Cure*.  In the event of a deficiency of proof, the Claims Processor shall provide the Class Member with an explanation of the deficiency and a reasonable opportunity to cure the deficiency.

    8.4.3.2 *Assistance in Perfecting Claim*.  A copy of all deficiency notices with personally identifiable information removed or redacted and a unique number identifier assigned by the Claims Processor shall also be provided to Class Counsel, who may assist the Class Member in curing any problems with the Class Member's claim via communication with, or through, the Claims Processor or with the Class Member directly if he or she provides the Claims Processor with a written HIPAA-compliant authorization to release his or her contact information to Class Counsel or if he or she contacts Class Counsel him or herself.

8.4.4    *Disposition of Claims*.  The Claims Processor shall provide counsel for the Parties with copies of all Claim Forms submitted by Class Members (or their designees), along with the disposition of each claim (denied, approved at $X, etc.) with all personally identifiable information redacted by the Claims Processor and a unique number identifier assigned to each Class Member who submits a claim. The decision of the Claims Processor is entitled to a rebuttable presumption of accuracy.

8.4.5    *Arbitration*.  Defendants, Class Counsel, or a Class Member may challenge the decision of the Claims Processor.  Any dispute over whether a claim is valid or not shall be submitted for final and binding arbitration before Judge George Finkle (ret.) at Judicial

13

Dispute Resolution in Seattle, Washington.  The type and manner of the arbitration (in-person, by phone or on the papers) shall be determined by the arbitrator in his sole discretion. Expenses of the arbitrator shall be paid as described in Section 8.3.

8.4.6   *Reversion.*  If, after the payment of all items identified in Sections 8.2 and 8.3, funds remain in the Qualified Settlement Fund, then the Claims Processor shall cause the Qualified Settlement Fund to return those funds, minus any court-approved or agreed holdback for expenses incurred but not yet paid, taxes, and estimated administrative expenses necessary to complete the activities of and close the Qualified Settlement Fund, to Catholic Health Initiatives within 60 days after Class Counsel submits a final report to the Court regarding Claims processing and disbursement of funds from the Qualified Settlement Fund, which shall be no later than 30 days after the Claims Processor processes all valid claims.  Any part of the holdback remaining after all expenses and other liabilities of the Qualified Settlement Fund are paid shall be returned to Catholic Health Initiatives upon closure of the Qualified Settlement Fund.

8.4.7   *Pro Rata Distritibution.*  If, after the payment of amounts set forth in Section 12, insufficient funds remain in the trust account to pay all valid claims under this Section 8 at 100%, then each such claim shall be paid on a *pro rata* basis with all other valid claims.

8.4.8   *Monitoring of Qualified Settlement Fund.* The Claims Processor shall also monitor the Qualified Settlement Fund and file all informational and other tax returns necessary or advisable with respect to the Qualified Settlement Fund (including without limitation, the returns described in Treas. Reg. §1.468B-2(k)).

8.5   *Payment of Unreimbursed ABA-related Expenses for J.R.*  The Parties agree that the documented amount of unreimbursed ABA-related expenses incurred by J.R. is $18,674.00 and this amount shall be paid pursuant to Section 8.3.

## 9.   *Effective Date of Settlement.*

9.1   *Effective Date.*  This Agreement shall be fully effective and binding on the date on which all of the conditions to settlement set forth in Section 2 have been fully satisfied or waived.

9.2   *Disputes Concerning the Effective Date of Settlement.*  If the Parties disagree as to whether each and every condition set forth in Section 2 has been satisfied or waived, they shall promptly confer in good faith and, if unable to resolve their differences within ten (10) business days thereafter, shall present their dispute for mediation and/or arbitration under Section 14.1.

9.3     *Termination Date.*  This Agreement and all obligations imposed under it shall terminate on December 31, 2021.

**10.     *Termination of Agreement to Settle Claims.***

10.1    *Court Rejection*.  If the Court declines to preliminarily or finally approve the Settlement as written, with the exception of approval of the form of the Class Notice, in whole or in part, then this Agreement shall automatically terminate, and thereupon become null and void.  In the event the Court approves a settlement that differs from the terms herein (whether material or immaterial), in whole or in part, or does not afford Defendants a complete release, then either the Defendants or Class Counsel may, in their sole and absolute discretion terminate this Agreement by delivering a notice of termination to counsel for the opposing party within 15 court days of the Court's final order.

10.2    *Court of Appeals Reversal*.  If the Court of Appeals reverses the Court's order approving the Settlement, then, provided that no appeal is then pending from such a ruling, this Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the mandate of the Court of Appeals.

10.3    *Supreme Court Reversal*.  If the Supreme Court of the United States reverses the Court's order approving the Settlement, then this Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the Supreme Court's mandate.

10.4    *Pending Appeal*.  If an appeal is pending of an order declining to approve the Settlement, this Agreement shall not be terminated until final resolution of dismissal of any such appeal, except by written agreement of the Parties.

**11.     *Consequences of Termination.***  If the Agreement is terminated and rendered null and void for any reason, then the following shall occur:

11.1    *Reversion of Action*.  The Action shall revert to its status as of September 25, 2019 and the fact and terms of this Agreement shall not be used in the Action for any purpose.

11.2    *Releases and Terms Void*.  All Releases given or executed pursuant to this Agreement shall be null and void and none of the terms of the Agreement shall be effective or enforceable.

**12.     *Attorney Fees, Litigation Expenses and Case Contribution Awards.***

12.1    *Attorney Fees*.  Class Counsel shall apply for attorney's fees under the common fund/common benefit doctrine in an amount up to, but not

exceeding, 28% of the Settlement Amount.  Defendants will take no position with respect to this application for attorney's fees, which is subject to review and approval by the Court.

12.2    *Litigation Costs*.  Class Counsel's out-of-pocket litigation costs shall be reimbursed out of the Settlement Amount, subject to the Court's review and approval.

12.3    *Case Contribution Award*.  A case contribution award of up to, but not exceeding, $10,000 for the Named Plaintiffs (for a total of no more than $10,000) may be requested.  Defendants will take no position with respect to this application for a case contribution award, which is subject to the Court's review and approval, provided that the request does not exceed the amount set forth herein.

**13.    *Press Release.*** None of the Parties will issue any proactive statements to the media. If any of the Parties are contacted by the media, the Parties can issue mutually agreed-upon reactive statements.

**14.    *Miscellaneous***

14.1    *Dispute Resolution*.  The Parties agree that any dispute regarding the terms, conditions, releases, enforcement or termination of this Agreement shall be resolved by a mutually-agreed upon mediator in Seattle, Washington, through mediation and, if mediation is unsuccessful, through binding arbitration before retired King County Superior Court Judge George Finkle. If Judge Finkle is unavailable, the Parties shall arbitrate before another mutually-agreed upon arbitrator at Judicial Dispute Resolution in Seattle, Washington.

14.2    *Governing Law*.  This Agreement shall be governed by the laws of State of Washington without regard to conflict of law principles.

14.3    *Severability*. The provisions of this Agreement are not severable.

14.4    *Amendment*.   Before entry of the Preliminary Approval Order, this Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties.  Following entry of the Preliminary Approval Order, this Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.

14.5    *Waiver*.  The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

14.6    *Construction*.   None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision thereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause the provision to be construed against the drafter thereof.

14.7    *Principles of Interpretation*.   The following principles of interpretation apply to this Agreement:

14.7.1  *Headings*.  The headings herein are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement.

14.7.2  *Singular and Plural*.  Definitions apply to the singular and plural forms of each term defined.

14.7.3  *References to a Person*.  References to a person include references to an entity, and include successors and assigns.

14.8    *Survival*.  All representations, warranties and covenants set forth in herein shall be deemed continuing and shall survive the Effective Date of Settlement.

14.9    *Entire Agreement*.  This Agreement contains the entire agreement among the Parties relating to this Settlement and supersedes any and all prior verbal and written communications regarding the Settlement.

14.10   *Counterparts*.  This Agreement may be executed by exchange of executed faxed or PDF signature pages, and any signature transmitted in such a manner shall be deemed an original signature.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute one and the same instrument.

14.11   *Binding Effect*.  This Agreement binds and inures to the benefit of the Parties hereto, their assigns, heirs, administrators, executors, and successors-in-interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees.

14.12   *Further Assurances.*   Each of the Parties agree, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith promptly execute and deliver such other documents and take such other actions as may be necessary to consummate the subject matter and purpose of this Agreement.

14.13   *Tax Advice Not Provided*. No opinion or advice concerning the Tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Action to the Settlement Class, nor is any

representation or warranty in this regard made by virtue of this Agreement. The Tax obligations of the Settlement Class and the determination thereof are the sole responsibility of each Class Member, and it is understood that the Tax consequences may vary depending on the particular circumstances of each Class Member.

**SIGNATURES:**

**CATHOLIC HEALTH INITIATIVES MEDICAL PLAN,**


DATED:  _October 29, 2019_      By _Edward J Rathman_
                                Its _Senior Vice President, Benefits_


STATE OF _Kentucky_    )
                       ) ss.
COUNTY OF _Boone_      )

On this _29th_ day of _October_, 2019, before me, the undersigned, a Notary Public in and for the State of _Kentucky_, duly commissioned and sworn, personally appeared _Edward Rathman_, to me known to be the _SVP, Benefits_ of CATHOLIC HEALTH INITIATIVES MEDICAL PLAN, who executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of CATHOLIC HEALTH INITIATIVES MEDICAL PLAN, for the uses and purposes therein mentioned, and on oath stated that s/he is authorized to execute the said instrument on behalf of CATHOLIC HEALTH INITIATIVES MEDICAL PLAN.

Witness my hand and official seal hereto affixed the day and year first above written.


_Susan P Annear_
NOTARY PUBLIC in and for the State of _Kentucky_, residing at _Florence, KY_
My commission expires: _5/19/20_


```
SUSAN P. ANNEAR
Notary Public-State at Large
KENTUCKY
My Commission Expires 05-19-2020
```

COMMONSPIRIT HEALTH (formerly
known as Catholic Health Initiatives)

DATED: _11·4·2019_    By _[signature]_
                      Its _Chief Risk Officer_

STATE OF _Ky_ )
              ) ss.
COUNTY OF _Boone_ )

On this _4_ day of _November_, 2019, before me, the undersigned, a Notary
Public in and for the State of _Kentucky_, duly commissioned and sworn,
personally appeared _Phil Foster_, to me known to be the
_Chief Risk Officer_ of COMMONSPIRIT HEALTH, who executed the
foregoing instrument, and acknowledged the said instrument to be the free and voluntary
act and deed of COMMONSPIRIT HEALTH, for the uses and purposes therein mentioned,
and on oath stated that s/he is authorized to execute the said instrument on behalf of
COMMONSPIRIT HEALTH.

Witness my hand and official seal hereto affixed the day and year first above
written.

_Alan McVay_
NOTARY PUBLIC in and for the State of
_Kentucky_, residing at _Florence, Ky_
My commission expires: _1/20/2020_

ALAN McVAY
Notary Public, Kentucky State at Large
My Commission Expires Jan. 20, 2020
Notary ID# 548380

**BLUE CROSS BLUE SHIELD OF ILLINOIS, A DIVISION OF HEALTH CARE SERVICE CORPORATION**

DATED: November 1, 2019

By: Karen Quirk
Its: DSVP, Chief Litigation Officer

STATE OF Illinois )
                    ) ss.
COUNTY OF Cook )

On this 1st day of November, 2019, before me, the undersigned, a Notary Public in and for the State of Illinois, duly commissioned and sworn, personally appeared Karen Quick, to me known to be the DSVP, Chief Litigation Officer of BLUE CROSS BLUE SHIELD OF ILLINOIS, A DIVISION OF HEATLH CARE SERVICE CORPORATION, who executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of BLUE CROSS BLUE SHIELD OF ILLINOIS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, for the uses and purposes therein mentioned, and on oath stated that s/he is authorized to execute the said instrument on behalf of BLUE CROSS BLUE SHIELD OF ILLINOIS, A DIVISION OF HEALTH CARE SERVICE CORPORATION.

Witness my hand and official seal hereto affixed the day and year first above written.

MARIA A WEIDENAAR
Official Seal
Notary Public - State of Illinois
My Commission Expires Oct 24, 2020

NOTARY PUBLIC in and for the State of Illinois, residing at Orland Park, IL
My commission expires: Oct. 24, 2020

J████ R█████████, BY AND THROUGH HIS
PARENT JU██ R█████████,

DATED: ___10/29/2019___          By _____

STATE OF WASHINGTON )
                    ) ss.
COUNTY OF KING      )

On this day personally appeared before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, Ju R to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that she signed the same as her free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 29ᵗʰ day of ___October___, 2019.

```
DOUGLAS L STOCK
NOTARY PUBLIC
STATE OF WASHINGTON
License Number 90414
My Commission Expires January 29, 2023
```

NOTARY PUBLIC in and for the State of
__Washington__, residing at __Seattle__
My commission expires: __1-29-2023__

J█████ R████████ BY AND THROUGH HIS
PARENT JA██ R████████,

DATED: _10/29/19_          By _____

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF KING       )

On this day personally appeared before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, Ja R, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _27th_ day of _October_, 2019.

DOUGLAS L STOCK
NOTARY PUBLIC
STATE OF WASHINGTON
License Number 90414
My Commission Expires January 29, 2023

NOTARY PUBLIC in and for the State of _Washington_, residing at _Seattle_
My commission expires: _1-29-2023_

23

APPROVED AS TO FORM:

SIRIANNI YOUTZ SPOONEMORE HAMBURGER

Richard E. Spoonemore
Eleanor Hamburger
Attorneys for the Named Plaintiffs and the Settlement Class

KILPATRICK TOWNSEND
& STOCKTON LLP

_____

Gwendolyn C. Payton
Attorneys for Defendant
Blue Cross Blue Shield of Illinois

GROOM LAW GROUP, CHTD

_____

Lars C. Golumbic
Kara P. Wheatley

MCKENZIE ROTHEWELL BARLOW
& COUGHRAN, P.S.

_____

Jeffrey G. Maxwell

Attorneys for Defendants Catholic Health Initiatives
Medical Plan and Commonspirit Health (formerly known as Catholic Health Initiatives)

24

APPROVED AS TO FORM:

SIRIANNI YOUTZ SPOONEMORE HAMBURGER

_____

Richard E. Spoonemore
Eleanor Hamburger
Attorneys for the Named Plaintiffs and the Settlement Class

KILPATRICK TOWNSEND
& STOCKTON L.L.P.

_____

Gwendolyn C. Payton
Attorneys for Defendant
Blue Cross Blue Shield of Illinois

GROOM LAW GROUP, CHTD

_____

Lars C. Golumbic
Kara P. Wheatley

MCKENZIE ROTHEWELL BARLOW
& COUGHRAN, P.S.

_____

Jeffrey G. Maxwell

Attorneys for Defendants Catholic Health Initiatives
Medical Plan and Commonspirit Health (formerly known as Catholic Health Initiatives)

APPROVED AS TO FORM:

SIRIANNI YOUTZ SPOONEMORE HAMBURGER

_____

Richard E. Spoonemore
Eleanor Hamburger
Attorneys for the Named Plaintiffs and the Settlement Class

KILPATRICK TOWNSEND
& STOCKTON LLP

_____

Gwendolyn C. Payton
Attorneys for Defendant
Blue Cross Blue Shield of Illinois

GROOM LAW GROUP, CHTD

_____
Ilars C. Golumbic
Kara P. Wheatley

MCKENZIE ROTHEWELL BARLOW
& COUGHRAN, P.S.

_____
Jeffrey G. Maxwell

Attorneys for Defendants Catholic Health Initiatives
Medical Plan and Commonspirit Health (formerly known as Catholic Health Initiatives)

24